IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


The Revocable Living Trust of
Stewart I. Mandel, Morris Mandel, Trustee,      Case No. 3:14-cv-02245

              Plaintiff,

  v.

                               MEMORANDUM OPINION AND
                               ORDER

Lake Erie Utilities Company, et al.,

              Defendants.


      Before me is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 41), which I converted to a motion for judgment on the pleadings during the telephone conference I conducted on July 2, 2015 (Doc. No. 46). Defendants also filed a statement of the issues presented in their motion to dismiss. (Doc. No. 48). Plaintiff filed an opposition (Doc. No. 56) and Defendants replied (Doc. No. 59). Plaintiff then filed a sur-reply (Doc. No. 62), to which Defendants replied (Doc. No. 63).[1] For the reasons that follow, Defendants' motion for judgment on the pleadings is denied in part and granted in part.

### BACKGROUND

      On October 8, 2014, Plaintiff Revocable Living Trust of Stewart I. Mandel, Trustee Morris Mandel, filed suit against Defendants Lake Erie Utilities Company (LEU), Burgundy Bay Association (BBA), Robert Beach, Eric Halterman, Krissy Hart, Bill Lodermeier, Greg Meyers, Rich

---

[1] As part of their reply, Defendants provided an updated judgment entry entered by the probate court. (Doc. No. 59-1). Defendants provide this in an attempt to show the state court found Defendants had not placed liens upon Plaintiff's property. As the state-court proceedings were referenced in the amended complaint and are central to Plaintiff's claims, I may consider the amended judgment entry provided by Defendants without converting the motion for judgment on the pleadings into a motion for summary judgment. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But I find it unnecessary to consider the updated judgment entry at this time, as an allegedly contrary finding with respect to the liens will have no bearing on the outcome of this decision.

O'Loughlin, John Fargo, Jeff Clark, Mike Cummings, Kay Dickerson, John Held, Mark Lawless, Charles Meck, and Jennifer Oetting. (Doc. No. 1). Plaintiff later amended its complaint to add Defendant David M. Buda. (Doc. No. 3). Plaintiff brings suit pursuant to 18 U.S.C. § 1964(c), alleging Defendants violated the civil Racketeer Influenced and Corrupt Organizations (RICO), 18 U.S.C. § 1962(c). (Doc. No. 1). Plaintiff also alleges two counts of state-law tortious interference with contract rights. (Doc. No. 3 at 17-18).

Plaintiff brings these claims based on a matter already litigated before the probate court. Stewart I. Mandel owned three lots located in the Burgundy Bay Subdivision. (Doc. No. 3 at ¶ 27). With respect to two of these lots, Mr. Mandel signed a contiguous lot agreement. (Doc. No. 3 at ¶ 28). Per the agreement, Mr. Mandel agreed not to develop the contiguous lots, and Defendants BBA and LEU agreed to waive all fees related to the contiguous lots. (Doc. No. 3 at ¶ 28). Mr. Mandel created the Stewart I. Mandel Trust and incorporated the lots into that trust. (Doc. No. 3 at ¶ 29). Upon Mr. Mandel's death, the Trust entered into agreements to sell the contiguous lots, at which point Defendants interfered in those sales. (Doc. No. 3 at ¶¶ 31-32). Defendants claimed the contiguous lot agreement represented only a deferment of the fees relating to the contiguous lots and that Plaintiff Trust breached the agreement, thereby bringing due all the deferred fees. (Doc. No. 3 at ¶¶ 32-33). Plaintiff initiated proceedings in the state court, and the probate court eventually found in favor of Plaintiff. (Doc. No. 3 at ¶ 35). Plaintiff then brought the instant action claiming RICO violations and tortious interference with contract rights.

## APPLICABLE LEGAL STANDARD

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed using the same standard employed for a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be

taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A. v. Wignet*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner &Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

## DISCUSSION

**Federal Civil RICO Claim**

"RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.'" *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)). Section 1962(c) makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." As such, to state a claim for relief under RICO, the plaintiff must allege the defendants engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Defendants challenge the sufficiency of Plaintiff's allegations with respect to each element of the RICO claim, so I will address each element in turn.

<u>Enterprise</u>

To begin, Plaintiff must adequately allege the existence of an enterprise and the existence of a person distinct from the enterprise who is conducting the enterprise's affairs. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise is "a group

3

of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)) (internal quotation marks omitted). An association-in-fact enterprise must have an ascertainable structure consisting of at least "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* Additionally, "[t]he association-in-fact enterprise must be separate and distinct from the pattern of racketeering activity in which it engages, but the enterprise could have been formed solely for the purpose of engaging in the racketeering activity. *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 265 (6th Cir. 2014).

Defendants here claim Plaintiff has failed to adequately plead the existence of an enterprise by failing to plead the existence of a person distinct from the enterprise. (Doc. No. 59 at 14). Defendants also claim Plaintiff has failed to adequately plead an association-in-fact enterprise. (Doc. No. 59 at 16).

First, Plaintiff has adequately pled an enterprise and persons distinct from that enterprise. Plaintiff, in its amended complaint, pled BBA and LEU as Ohio corporations which qualify as enterprises within the meaning of RICO. (Doc. No. 3 at ¶¶ 38 & 39). Plaintiff then pled the involvement of fifteen distinct individuals whom Plaintiff alleges took part in the operation or management of the enterprises BBA and LEU. (Doc. No. 3 at ¶¶ 41 & 42). Under the Supreme Court's ruling in *Cedric Kushner*, Plaintiff has satisfied the distinctiveness requirement because Plaintiff pled the corporations as the enterprises and the individuals as the distinct persons. 533 U.S. at 163-64; *see also City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 550-51 (S.D.N.Y. 2005). As such, "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."

4

Second, Plaintiff has adequately pled an association-in-fact enterprise between BBA and LEU. Plaintiff alleged Defendants BBA and LEU conspired to "falsely offer and promise to waive all dues, fees, and special assessments otherwise chargeable to a contiguous lot, in exchange for the lot owner's agreement not to construct a residence on or otherwise develop his or her contiguous lot." (Doc. No. 3 at ¶ 15). These offers were false, because BBA and LEU intended, instead of waiving the charges, to defer those charges until the owner of a contiguous lot attempted to sell one of the contiguous lots, at which time BBA and LEU would demand payment of the deferred fees. (Doc. No. 3 at ¶ 15). Plaintiff has thus established the purpose of the alleged association-in-fact, the common purpose which brought BBA and LEU together. *See Boyle*, 556 U.S. at 946.

Plaintiff has pled that BBA and LEU launched their scheme in either 1990 or 1991 (Doc. No. 3 at ¶ 14), thereby establishing the longevity of the enterprise was sufficient to allow the members of this enterprise to carry out the enterprise's purpose. *See Boyle*, 556 U.S. at 946.

Finally, Plaintiff alleges Defendant Buda, Board of Trustees member and legal counsel for BBA, and non-party Richard Plewacki, Chairman and President of LEU, along with others, worked together to concoct and then carry through this scheme. (Doc. No. 3 at ¶¶ 13-14, 22). BBA and LEU together entered into contracts with contiguous lot owners and subsequently used the mails in furtherance of the scheme (Doc. No. 3 at ¶¶ 16 & 51). These same defendants, according to Plaintiff, have engaged in similar wrongdoing with respect to other lot owners within the Burgundy Bay Subdivision (Doc. No. 3 at ¶¶ 20-22 & Doc. No. 3-1). Thus, Plaintiff has adequately pled the relationship between BBA and LEU with respect to this association-in-fact enterprise. *See Boyle*, 556 U.S. at 946. Accordingly, Plaintiff has sufficiently pled both an enterprise and an association-in-fact enterprise.

Conduct

Upon establishing the existence of a RICO enterprise, Plaintiff must set forth allegations that the defendants conducted or participated, "directly or indirectly, in the conduct of such enterprise's affairs . . . ." 18 U.S.C. § 1962(c). To satisfy this participation requirement, the defendants must have "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). Defendants need only have "some part," not primary responsibility, in directing the enterprise's affairs to satisfy this element. *Id.* at 179. And the Sixth Circuit has held that making decisions on behalf of the enterprise or "knowingly carrying out the orders of the enterprise satisfies the operation or management test." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 793 (6th Cir. 2012) (internal quotation marks and citation omitted).

Defendants claim Plaintiff "alleges nothing more than that Defendants engaged in a variety of ordinary board functions" and that these functions fail to satisfy the operation or management test. (Doc. No. 41 at 17-18). Taking Plaintiff's allegations as true, however, Defendants' alleged conduct satisfies the operation or management test. Plaintiff has alleged that the individual defendants, as members of the Boards of Trustees for the two enterprises, have authorized or directed personnel to "falsely notify the broker and title company handling" the sales of the contiguous lots that money from the proceeds of those sales was due BBA and LEU, engaged counsel to enforce payments of these sums, approved the use of corporate funds to take part in litigation relating to the CLA, and "formulating and/or ratifying the corporation's false claim" that the CLA was a deferral agreement that had been breached. (Doc. No. 3 at ¶¶ 41-42). Additionally, the CLA credits "the BBA's Board of Trustees and LEU" with having determined that owners of contiguous lots should be exempt from fees for those lots. (Doc. No. 3-2 at 1). Taking part in these tasks is enough to establish Defendants' roles in conducting their enterprises.

6

Racketeering Activity

"To establish a RICO violation under § 1962(c), a plaintiff must allege that the RICO enterprise engaged in a pattern of racketeering activity consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (citing 18 U.S.C. § 1961(5)) (internal quotation marks omitted). Included within the definition of "racketeering activity" is the predicate act of mail fraud, which Plaintiff has alleged in this case. 18 U.S.C. § 1961(1); *see* 18 U.S.C. § 1341. "Mail fraud consists of (1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id.* "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (internal quotation marks and citation omitted).

Defendant challenges Plaintiff's claims on two grounds. First, Defendants claim Plaintiff has failed to plead the predicate acts of mail fraud with particularity. (Doc. No. 41 at 12). Defendants aver that Plaintiff, for each incident of mail fraud alleged, must identify the false statement made in the mailing, who made the statement, and facts showing Plaintiff relied on such statement. (Doc. No. 41 at 12).

Both the Supreme Court and the Sixth Circuit have held that, in the RICO context, a plaintiff does not have to plead or prove the plaintiff relied upon the defendant's alleged misrepresentations. *Bridge*, 553 U.S. at 661; *Brown v. Cassens Transport Co.*, 546 F.3d 347, 357 (6th Cir. 2008). The Supreme Court has also declared "that innocent mailings-ones that contain no false information-may supply the mailing element." *Schmuck v. United States*, 489 U.S. 705, 715 (1989) (internal quotation marks and citation omitted). Because innocent mailings may satisfy the mailing

7

element, the pleading standard must also be different. I find persuasive, therefore, the approach followed by other courts in cases where innocent mailings are alleged to have been used in furtherance of a scheme. In that situation, "a detailed description of the underlying scheme and the connection therewith of the mail . . . is sufficient to satisfy Rule 9(b)." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998).

That standard is easily met in this case. Plaintiff has alleged, in significant detail, the existence of a scheme that has targeted both Plaintiff and other residents in the Burgundy Bay Subdivision. (Doc. No. 3 at ¶¶ 15-29, 32). Plaintiff has described the process by which Defendants allegedly defrauded residents through the signing of contiguous lot agreements, subsequent claims that owners selling their contiguous lots had breached those agreements, and claiming to have liens on the lots being sold. (Doc. No. 3 at ¶¶ 25-29, 32). Plaintiff attached to its complaint the names of other owners who have entered into these agreements (Doc. No. 3-1) and a copy of the contiguous lot agreement signed by Plaintiff and Defendants BBA and LEU (Doc. No. 3-2). Plaintiff has also alleged the successful implementation of this scheme in two instances when contiguous lot owners simply paid the money Defendants demanded of them once they sold their contiguous lots. (Doc. No. 3 at ¶¶ 20-21). And Plaintiff has alleged a communication between representatives for both BBA and LEU celebrating the success of the scheme. (Doc. No. 3 at ¶ 22).

As for the mailings, Plaintiff has alleged one letter containing fraudulent information and eighteen innocent mailings. (Doc. No. 3 at ¶¶ 33 & 51). The letter Defendant Buda sent on October 9 to Plaintiff's counsel is alleged to contain fraudulent claims. Plaintiff, therefore, must identify the fraudulent statement, name the speaker of the fraudulent statement, state where and when this statement was made, explain why the statement was fraudulent, and demonstrate *scienter*. *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404-05 (6th Cir. 2012). Plaintiff may demonstrate *scienter* "by showing the defendant acted either with a specific intent to defraud or with

recklessness with respect to potentially misleading information." *Id.* Plaintiff alleges Defendant Buda's letter falsely conveyed to Plaintiff's counsel that the contiguous lot agreement was only a deferral of the fees associated with the contiguous lot agreement and that Plaintiff was responsible for paying those charges now that it was selling the contiguous lots. (Doc. No. 3 at ¶ 33). Plaintiff alleges Defendant Buda, as a lawyer and a principal architect of the scheme, knew these claims to be false and sent this letter making false claims. (Doc. No. 3 at ¶¶ 14, 22, 24, & 33). The probate court subsequently found the contiguous lot agreements were not deferrals of fees and Plaintiff owed Defendants no money. (Doc. No. 3 at ¶ 35). The pleading of this letter, as described in detail in paragraph thirty-three and listed as one of the predicate acts in paragraph fifty-one of the amended complaint, thus satisfies the heightened pleading requirement of Rule 9(b). *See Heinrich*, 668 F.3d at 404-05.

The litigation documents alleged to have been mailed, as well as the initial letter sent by Plaintiff's counsel to defendant, are innocent, sent simply in the course of carrying out the overall scheme. (Doc. No. 3 at ¶ 51a, c-s); *see Bridge*, 553 U.S. at 647. Plaintiff describes the senders and recipients of these mailings, as well as the nature of their contents. (Doc. No. 3 at ¶ 51). Plaintiff connects these mailings to the overall scheme by alleging Defendants threatened to sue Plaintiff if it did not pay the fees Defendants demanded, which then forced Plaintiff to seek judicial resolution. (Doc. No. 3 at ¶ 35). Defendants threatened legal action, which necessarily includes the mailing of documents, as a means of carrying through their scheme. As such, Defendants anticipated using, and indeed used, mailings to further their scheme. Because Plaintiff has described the underlying scheme in detail, described the innocent mailings, and connected them to the underlying scheme, I find Plaintiff has met the pleading requirements for alleging fraud in relation to a civil RICO claim.

Second, Defendants claim the mailing of litigation documents cannot constitute mail fraud as a RICO predicate act, because the attorneys involved did no more than render legal advice and because Plaintiffs, not Defendants, instituted the legal proceedings. (Doc. No. 41 at 8-11).

In determining whether an attorney can violate the mail fraud statute by engaging in litigation, the Sixth Circuit has noted a difference between attorneys who "simply render legal advice and file documents in the course of litigation" and attorneys who do "far more" than that. *Melton v. Blankenship*, No. 08-5346, slip op. at 3 (6th Cir. Jan. 13, 2009). The court in that case discussed *Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997), a case in which the Eighth Circuit concluded the plaintiff's complaint could support a verdict against the defendant law firm for RICO violations because the complaint alleged the firm played a role in the operation or management of the enterprise. *See Handeen*, 112 F.3d at 1349. The Eighth Circuit highlighted the line "between traditional rendition of legal services and active participation in directing the enterprise." *Id.* at 1349. The Sixth Circuit in *Melton* adopted the same distinction and affirmed the district court's dismissal of a complaint against a law firm it found to only have provided traditional legal services.

Following the distinction adopted by this Circuit, I find Plaintiff has sufficiently alleged Defendant Buda's participation in the management and operation of the enterprise such that his mailing of legal documents in the state-court case qualify as predicate acts of mail fraud. Plaintiff asserts Defendant Buda was on BBA's Board of Trustees, in addition to serving as BBA's legal counsel. (Doc. No. 3 at ¶ 13). Plaintiff further alleges Defendant Buda was a principal architect of the scheme to defraud Burgundy Bay landowners and met with trustees and officers of BBA and LEU to create the scheme. (Doc. No. 3 at ¶ 14). As evidence of Defendant Buda's participation, Plaintiff alleges a non-party member of the enterprise sent a letter to Defendant Buda celebrating the success of the approach the two "hammered out" in assessing and collecting fees from two landowners who sold their contiguous lots. (Doc. No. 3 at ¶ 22). Defendant Buda subsequently

represented Defendant BBA in the state-court proceedings. (Doc. Nos. 3 at ¶ 7 & 56-1 at 1). Based on the foregoing, I find Plaintiff has plausibly alleged Defendant Buda was more than a zealous advocate for Defendant BBA. As such, the mailings sent to and from BBA and Defendant Buda (Doc. No. 3 at ¶ 51a-d, f-i, l, n-p, & r) qualify as predicate acts of mail fraud. Plaintiff, however, has no claims against counsel for LEU, giving me no reason to infer LEU's counsel has done more than perform typical lawyer duties in its representation of LEU. Therefore, the mailings sent to and from LEU (Doc. No. 3 at ¶ 51e, j-k, m, q, & s) cannot be predicate acts of mail fraud.

Finally, with respect to Defendants' point that Plaintiff initiated the state-court proceeding, I find nothing in the case law that prohibits recovery when the plaintiff in a RICO suit initiated the original proceedings that led to the injury. Although rare, such a scenario is not unheard of. *See Warnock v. State Farm Mut. Auto. Ins. Co.*, No. 5:08-cv01-DCB-JMR, 2008 WL 4594129 (S.D.Miss. Oct. 14, 2008). Therefore, Plaintiff has sufficiently pled the required racketeering acts.

<u>Pattern</u>

As Plaintiff has adequately alleged thirteen predicate acts of racketeering activity, the question then becomes whether these acts, if proven, would sufficiently establish a pattern of racketeering activity. Defendants claim Plaintiff cannot show a pattern of racketeering activity because "[t]here is only one alleged predicate act of mail fraud, one alleged type of injury claimed, one alleged victim in the Plaintiff, and seventeen named perpetrators." (Doc. No. 41 at 21).

To show a pattern, Plaintiff "must show that the racketeering predicates are related *and* that they amount to or pose a threat of continued criminal activity." *Heinrich*, 668 F.3d at 409 (citing *H.J. Inc. v. Nw Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989)) (internal quotation marks omitted). Predicate acts are related if they share similar purposes, results, participants, victims, methods of commission, or if they "are interrelated by distinguishing characteristics and are not isolated events." *Id.* Here, the predicate acts consist of two letters and eleven mailed litigation documents, all sent between the

11

defendants and the plaintiff and all relating to Defendants' attempts to assess fees against Plaintiff for selling its contiguous lots. Accordingly, I find the relationship prong of the pattern test is satisfied.

Continuity may be satisfied by showing either an open-ended or closed-ended pattern of activity. *Id.* at 409-10. A plaintiff shows closed-ended continuity by showing a series of related predicate acts that have occurred over an extended period of time. *Brown*, 546 F.3d at 355. There is no predetermined point at which a period of time becomes "extended," but case law has established that seventeen months is too short, *Vemco v. Camardella*, 23 F.3d 129, 134-35 (6th Cir. 1994), and more than three years is sufficient. *Brown*, 546 F.3d at 355. In this case, Plaintiff has alleged a series of thirteen related predicate acts spanning more than three years. (Doc. No. 3 at ¶ 51). This, therefore, is sufficient to establish closed-ended continuity. *See id.* Plaintiff has, therefore, established a pattern of racketeering activity.

Injury

To state a claim for relief under the civil RICO provisions, Plaintiff must show a RICO predicate offense "not only was a [but-for] cause of his injury, but was the proximate cause as well." *Hemi Group, LLC*, 559 U.S. at 9 (internal quotation marks and citation omitted). Proximate cause requires a "direct relation between the injury asserted and the injurious conduct alleged." *Id.* (internal quotation marks and citation omitted). Under RICO, the causal link between the alleged injury and the alleged conduct may "'be too weak to constitute proximate cause – because it is insubstantial, unforeseeable, speculative, or illogical, or because of intervening causes.'" *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 263 (6th Cir. 2014) (quoting *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 614 (6th Cir. 2004)).

Here, Plaintiff has alleged thirteen predicate acts of mail fraud in furtherance of Defendants' alleged scheme. (Doc. No. 3 at ¶ 51). Two of these mailings were letters between some of the

Defendants and Plaintiff's counsel. (Doc. No. 3 at ¶ 51). The first letter, sent by Plaintiff's counsel on October 5, 2010, sought "an explanation as to the source and basis of the liens" that had been placed on the contiguous lots. (Doc. No. 3 at ¶¶ 33 & 51). The second letter was sent by Defendant Buda to Plaintiff's counsel on October 9, 2010, explaining why Defendants had placed liens on the contiguous lots and threatening legal action if Plaintiff refused to pay the monies due Defendant. (Doc. No. 3 at ¶ 33 & 51). The remaining mailings consisted of documents sent in the course of litigation. (Doc. No. 3 at ¶ 51).

As for injuries sustained, Plaintiff claims it was forced to rescind the sales of the two contiguous lots; lost the opportunity to sell the contiguous lots at advantageous prices; had to pay for taxes, insurance, and upkeep of the contiguous lots after rescinding the sales; and incurred legal expenses "in resisting Defendants' vigorous litigation tactics and false liens . . . ." (Doc. No. 3 at ¶ 53). Breaking these into two categories of injury – the first being the rescinded sales and their attendant costs and the second being the costs of litigating this matter in probate court – I will take each in turn.

Turning first to the rescinded sales of the contiguous lots, the lost opportunity to sell the lots for an advantageous price, and the costs Plaintiff incurred as a result of retaining possession of the contiguous lots after the sales were rescinded, I find Plaintiff has failed to adequately plead that the predicate acts of mail fraud were the direct and proximate causes of these injuries. According to the amended complaint, Plaintiff, in response to the threat of legal action made in the October 9 letter, suspended the sales of the contiguous lots and sought a ruling on the CLA from the probate court. (Doc. No. 3 at ¶ 35). Plaintiff next mentions the sales of the contiguous lots in its claim for damages, when Plaintiff then alleges it was forced to rescind the sales of the contiguous lots. (Doc. No. 3 at ¶ 53).

13

Plaintiff, however, fails to allege any facts connecting the predicate acts and its claim of forced rescission. Instead, Plaintiff later pleads that "Defendants' false liens clouded the title to the property and prevented the Trust from conveying clear title to the property." (Doc. No. 3 at ¶¶ 57 & 64). Plaintiff further claims that "[a]s a direct and proximate result, the Trust was unable to perform the contract . . . and lost the benefits of that contract." (Doc. No. 3 at ¶¶ 58 & 65). Here Plaintiff has connected the dots. Plaintiff's injuries related to the lost sales of the contiguous lots and the resulting costs in upkeep were actually the direct result of the liens placed on the lots by Defendants, not on the predicate acts of mail fraud. Under RICO, however, "the compensable injury necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985). Because Plaintiff's lost sales and upkeep expenses for the contiguous lots were not directly caused by the predicate acts, Plaintiff cannot recover for these damages under RICO.

Plaintiff is, however, able to move forward with its claim for attorney's fees. Plaintiff's attorney's fees are directly related to the predicate acts of mail fraud, as eleven of the thirteen alleged mailings are documents mailed in the course of litigating this matter before the probate court. (Doc. No. 3 at ¶ 51). With each document received or mailed, Plaintiff incurred more fees. The remaining two predicate acts, the letters pre-dating litigation, are the letters in which Plaintiff inquired as to the reason for the liens being placed on the contiguous lots and Defendants' response explaining the liens and threatening legal action. (Doc. No. 3 at ¶ 51). Upon receiving Defendants' letter, Plaintiff felt compelled to seek judgment in the state probate court and instituted proceedings. (Doc. No. 3 at 35). Defendant Buda's letter even threatened legal action, thereby demonstrating that Defendants anticipated the exact actions that Plaintiff now claims caused it injury. I find these predicate acts are a "substantial and foreseeable cause" of Plaintiff's claimed injury. *See Trollinger*, 370 F.3d at 615.

14

**State Law Claims**

Plaintiff raises state-law claims of tortious interference with contract rights against all of the defendants. (Doc. No.3 at ¶¶ 54-67). Twenty-eight U.S.C. § 1367(c)(3) allows me to decline to exercise supplemental jurisdiction over state-law claims if I have "dismissed all claims over which [the court] has original jurisdiction . . . ." I have dismissed Plaintiff's federal claims as they relate to Plaintiff's claimed lost sales of the contiguous lots. Remaining are Plaintiff's claims with respect to injuries in the form of money expended in the course of litigation. It would be premature to decide at this time whether I will exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. Accordingly, I will hold in abeyance a ruling on the defendants' motion for judgment on the pleadings with respect to Plaintiff's state-law claims, pending adjudication of Plaintiff's remaining federal claims.

## CONCLUSION

Accordingly, Defendants' motion for judgment on the pleadings (Doc. No. 41) is granted with respect to Plaintiff's claims for damages due to the lost sales of the contiguous lots and those related expenses, but the motion is denied with respect to Plaintiff's damages based on attorney's fees. I also hold in abeyance a ruling on this motion with respect to Plaintiff's state-law claims.

A follow up telephone conference is set for Monday, May 16, 2016 at 2:30 PM. Counsel to call the Court's bridge line at (877) 411-9748, access code 1231873.

So Ordered.

s/<u>Jeffrey J. Helmick</u><br>
United States District Judge

15