IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

The Revocable Living Trust of
Stewart I. Mandel, Morris Mandel, Trustee,            Case No. 3:14-cv-2245

          Plaintiff

     v.           MEMORANDUM OPINION

Lake Erie Utilities Company, et al.,

          Defendants

Before me is Defendants' motion to clarify the order I issued ruling on their motion for judgment on the pleadings. (Doc. No. 65). Also before me is Plaintiff's motion to amend its complaint. (Doc. No. 69). This motion contains in it a motion for reconsideration, as Plaintiff asks me to reconsider and vacate part of my earlier order. (*Id.* at 5-7). Defendants responded (Doc. No. 72), and Plaintiff replied (Doc. No. 75).

For the reasons that follow, Plaintiff's motion to amend is granted in part and denied in part. (Doc. No. 69). Defendants' motion to clarify is denied. (Doc. No. 67). Plaintiff's motion for reconsideration is denied. (Doc. No. 69).

## BACKGROUND

On October 8, 2014, Plaintiff Revocable Living Trust of Stewart I. Mandel, Trustee Morris Mandel, filed suit against Defendants Lake Erie Utilities Company ("LEU"), Burgundy Bay Association ("BBA"), Robert Beach, Eric Halterman, Krissy Hart, Bill Lodermeier, Greg Meyers, Rich O'Loughlin, John Fargo, Jeff Clark, Mike Cummings, Kay Dickerson, John Held, Mark Lawless, Charles Meck, and Jennifer Oetting. (Doc. No. 1). Plaintiff later amended its complaint to add Defendant David M. Buda. (Doc. No. 3). Plaintiff brings suit pursuant to 18 U.S.C. § 1964(c),

1

alleging Defendants violated 18 U.S.C. § 1962(c), the civil Racketeer Influenced and Corrupt Organizations Act. (Doc. No. 1). Plaintiff also alleges two counts of state-law tortious interference with contract rights. (Doc. No. 3 at 17-18).

Plaintiff brings these claims based on a matter already litigated before the Ottawa County Court of Common Pleas, Probate Division. *See Revocable Living Trust of Stewart I. Mandel v. Lake Erie Utils. Co.*, No. 20139003A. Stewart I. Mandel owned three lots located in the Burgundy Bay Subdivision. (Doc. No. 3 at ¶ 27). With respect to two of these lots, Mr. Mandel signed a contiguous lot agreement. (Doc. No. 3 at ¶ 28). Per the agreement, Mr. Mandel agreed not to develop the contiguous lots, and Defendants BBA and LEU agreed to waive all fees related to these two lots. (Doc. No. 3 at ¶ 28). Mr. Mandel created the Stewart I. Mandel Trust and incorporated the lots into that trust. (Doc. No. 3 at ¶ 29). Upon Mr. Mandel's death, the Trust entered into agreements to sell the contiguous lots, at which point Defendants interfered in those sales. (Doc. No. 3 at ¶¶ 31-32). Defendants claimed the contiguous lot agreement represented only a deferment of the fees relating to the contiguous lots and that Plaintiff Trust breached the agreement, thereby bringing due all the deferred fees. (Doc. No. 3 at ¶¶ 32-33). Plaintiff initiated proceedings in the state court, and the probate court eventually found in favor of Plaintiff. (Doc. No. 3 at ¶ 35). Plaintiff then brought the instant action claiming RICO violations and tortious interference with contract rights.

On May 14, 2015, Defendants filed a motion to dismiss, which I converted to a motion for judgment on the pleadings. (Doc. Nos. 41 & 46). I issued my decision on May 12, 2016, granting the motion with respect to Plaintiff's claims for damages due to the lost sales of the contiguous lots and related expenses and denying the motion with respect to Plaintiff's damages based on attorney's fees. (Doc. No. 65 at 15). I held in abeyance a ruling on the motion with respect to Plaintiff's state-law claims. (*Id.*).

## MOTION TO AMEND

Plaintiff now seeks leave to amend its complaint in order to correct the deficiencies identified in my ruling. (Doc. No. 69). Plaintiff proposes adding claims of RICO conspiracy, attempted Hobbs Act extortion, and Hobbs Act conspiracy, as well as adding facts to its existing claims. (*Id.*).

Federal Rule of Civil Procedure 15(a)(2) provides that, outside amending as a matter of course, a party may only amend its pleading with the written consent of the opposing party or with the court's leave. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Typically, delay alone will not justify denying leave to amend. *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). But "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). Denial of a motion to amend requires that I find "at least some significant showing of prejudice to the opponent." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (citing *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

As a threshold matter, Defendants contend Plaintiff's request to amend should be denied, because Plaintiff did not ask for leave to amend until after I ruled upon the motion for judgment on

the pleadings. (Doc. No. 72 at 6). Defendants point out that Plaintiff had a year during which it could have sought leave to amend its complaint based on the deficiencies Defendants identified in their motion. (*Id.*). Instead, Plaintiff waited and now wants a "do-over," using my previous opinion as a "how to guide." (*Id.* at 7) (internal quotation marks omitted).

Plaintiff denies it lacked diligence in correcting the errors identified by Defendants, as those challenges were found by me to be meritless. (Doc. No. 75 at 1-2). Plaintiff believes I sua sponte identified two pleading deficiencies, which it should now be allowed to correct. (*Id.* at 3). Plaintiff claims it is entitled to an opportunity to amend the deficiencies I found when ruling on the motion. (Doc. No. 69 at 8).

None of the Sixth Circuit cases cited by either side require me to deny Plaintiff an opportunity to amend simply because it did not seek amendment while the pleadings motion was pending. So, though filing prior to a decision on a dispositive motion is preferable, failing to do so does not necessarily bar a subsequent request to amend. And to Plaintiff's point, neither do these cases stand for the proposition that a plaintiff is entitled to amend its complaint following the grant of a motion to dismiss or a motion for judgment on the pleadings. Instead, I am required to consider whether there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment" or the like, the presence of which will lead to denial of the motion to amend. *Foman v. Davis*, 371 U.S. at 182.

Defendants claim Plaintiff has long known of the existence of its proposed new claims but has lacked diligence in seeking to amend and now provides no reason for such delay. (Doc. No. 72 at 3, 7-13). Defendants see Plaintiff's proposed amendments as its attempts to "change direction within the same lawsuit," which would cost Defendants "significant amounts of additional money, time, and effort," as they will essentially have to re-start this case from the beginning if the

4

amendments are allowed. (*Id.* at 11). Defendants further argue that amending the complaint to add Plaintiff's proposed Hobbs Act violations is futile, because Defendants' warnings to Plaintiff concerning possible litigation cannot form the basis of an extortion claim. (*Id.* at 12).

Plaintiff argues its existing and proposed claims are closely linked, such that evidence for the existing claims can be used to support the added claims. (Doc. No. 75 at 6-7). Specifically, Plaintiff intends to use "the very same evidence and proof" to satisfy the operation and management prong of the substantive RICO count as it would use to prove the proposed RICO conspiracy count. (*Id.* at 7). Thus, claims Plaintiff, there is no risk of unfair prejudice to Defendants. (*Id.*). Plaintiff also argues against Defendants' claim of futility with respect to the proposed Hobbs Act amendments. (*Id.* at 8-14).

A look at the timeline of this case is helpful. Plaintiff filed its complaint on October 8, 2014. (Doc. No. 1). Plaintiff filed its first amended complaint two days later, adding a defendant. (Doc. No. 3). The parties then began motion practice when Plaintiff, on January 16, 2015, filed for judgment on the pleadings or, in the alternative, to strike Defendants' answer. (Doc. No. 27). On May 5, 2015, I issued a decision denying Plaintiff's motion and ordering Defendants to amend their answer. (Doc. No. 37). Defendants filed their amended answer one week later. (Doc. No. 39). Two days later, Defendants filed their motion to dismiss, which I converted to a motion for judgment on the pleadings. (Doc. Nos. 41 & 46). Defendants then amended their answer a second time on May 21, 2015. (Doc. No. 43). After I granted at least one time extension, ordered Defendants to file a statement of issues related to their motion on the pleadings, and allowed the parties to file sur-replies, the motion on the pleadings became decisional on November 30, 2015. (Doc. Nos. 46, 50, 61, & 63). I issued my decision on May 12, 2016. (Doc. No. 65).

So Defendants are correct; there was approximately one year from the filing of their motion for judgment on the pleadings to my ruling, during which time Plaintiff could have sought leave to

5

amend its complaint.  And I disagree with Plaintiff's assertion that I sua sponte identified the two deficiencies it seeks to cure.  While the conclusions I came to were not exactly what Defendants argued, I arrived at those conclusions while analyzing the complaint in light of Defendants' challenges.  Still, I recognize that Plaintiff would not necessarily have been able to anticipate where my analysis would lead if not to Defendants' conclusions.  So to the extent Plaintiff seeks to cure those deficiencies by more specifically pleading facts underlying its existing claims and adding the closely related claim of RICO conspiracy, I am amenable.  *See Inge*, 281 F.3d at 626 (finding no prejudice to defense in granting leave to amend, "because Plaintiff's request to amend was a prompt effort to remedy pleading deficiencies identified by the district court in the dismissal order").

This case has yet to progress past the point of litigating the pleadings and the exchange of written discovery, so it is not accurate to say the parties are so far in that amending the complaint in these two ways would be significantly prejudicial to the defense.  The RICO conspiracy and substantive RICO violation claims are not just closely related; they overlap.  Plaintiff plans to plead the conspiracy claim based on the letter of October 9, 2010 (Doc. No. 70-1 at ¶ 65), a letter Plaintiff successfully pled as a predicate act of mail fraud under the substantive RICO claim (Doc. No. 3 at ¶ 51(b)).  And Defendants have been aware of Plaintiff's reliance on the October 9 letter since at least the filing of the first amended complaint.

Relatedly, Plaintiff has pulled more facts from the October 9 letter to plead a causal link between the mailing of the letter as an act of mail fraud and the claimed injury of lost sales of the contiguous lots.  (Doc. No. 70-1 at ¶¶ 34 & 35).  Again, Defendants have been aware of this letter and its contents, so any prejudice they may face is minimal.  As such, I find Plaintiff may amend its complaint to add additional facts to its existing claims and to add the RICO conspiracy claim.

Having permitted amendment of the complaint, I now find Plaintiff may pursue its claims for damages from the lost sales of the contiguous lots and related expenses.  I previously found that

6

Plaintiff failed to allege any facts connecting the predicate mail fraud acts to its claimed injury of lost sales. (Doc. No. 65 at 13-14). So in the absence of those connecting facts, I found the source of Plaintiff's lost sales had to be the placement of the liens on the contiguous lots. (*Id.* at 14). But Plaintiff has now provided that missing connection between the predicate acts of mail fraud and the loss of the sales. (*Compare* Doc. No. 70-1 at 37-38 & ¶¶ 34-35, *with* Doc. No. 3 at ¶¶ 33 & 35).

Plaintiff has alleged more facts from the letter of October 9, 2010, and has included with the complaint a copy of the letter. (Doc. No. 70-1 at 37-38 & ¶¶ 34 & 35). Because the October 9 letter was referenced in the second amended complaints and is central to Plaintiff's claims, I may consider the letter, along with the amended complaint, under the Rule 12(b)(6) standard. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). As pled, Defendant Buda falsely wrote in the letter to Plaintiff's counsel that "the deed restrictions automatically create[d] a lien in favor of LEU for any unpaid charges." (Doc. No. 70-1 at 37). Thus, the Trustee "believed and relied upon" this assertion when deciding that proceeding with the pending sales would be futile or would open up Plaintiff or the Trustee to liability for Plaintiff's inability to provide clear title to the lots. (*Id.* at ¶¶ 35-36). As pled, the letter led directly to the injury by causing Plaintiff and the Trustee to believe the contiguous lots were subject to liens in favor of LEU, thus leading the Trustee to suspend the sales of the contiguous lots. (*Id.* at ¶ 36). Accordingly, Plaintiff has successfully pled a direct connection between the injury in the form of lost sales and subsequent upkeep costs and the predicate offense of mail fraud. *See Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010). Therefore, Plaintiff may pursue its claims for these damages.

As for the proposed Hobbs Act amendments, I find Defendants will be significantly prejudiced if I permit these late additions. Unlike the RICO conspiracy claim and additional facts clarifying existing claims, the proposed Hobbs Act additions are based on an entirely new theory of wrongdoing – extortion. Defendants have not had to consider such a theory this entire time, and

7

adding it nearly two years after the action was originally filed will require Defendants to start anew in at least their internal research and defense preparation, further stretching their resources and causing delay in the case overall. As such, I find Defendants will be significantly prejudiced and deny Plaintiff's motion to amend with respect to the Hobbs Act amendments.

## MOTION TO CLARIFY

Federal Rule of Civil Procedure 60(a) gives me the power to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record," so long as I do so before an appeal has been taken.

Defendants believe, based on my order of May 12, 2016 (Doc. No. 65), that Defendant LEU and the individual defendants comprising LEU's Board of Trustees should have been dismissed. (Doc. No. 67). In my prior order, I found that Plaintiff could only seek to recover damages based on attorney's fees expended in pursuing its rights with respect to the contiguous lots. (Doc. No. 14). I also narrowed the actionable alleged predicate acts of mail fraud to two letters and litigation documents sent to and from Defendants Buda and BBA, thus excluding litigation documents sent to and from LEU. (*Id.* at 8-11). Defendants interpret these findings to mean I "concluded neither LEU nor any of its Board Member Defendants were responsible for the predicate acts of mail fraud necessary for Plaintiff's claims for damages related to attorney's fees to go forward." (Doc. No. 67 at 2). According to Defendants, this logically means those defendants should be dismissed entirely. (*Id.* at 2-3).

Contrary to Defendants' position, I did not conclude LEU and its board members are not potentially responsible for acts of mail fraud. I concluded there was no reason to believe the attorney hired by LEU did more than perform "typical lawyer duties" for LEU. (Doc. No. 65 at 11). This led me to conclude that the mailing of litigation relating to LEU could not constitute predicate acts of mail fraud. (*Id.*).

8

I also found Plaintiff had sufficiently pled BBA and LEU as enterprises and the fifteen individuals as distinct persons who took part in operating or managing the enterprises. (*Id.* at 4). I further found Plaintiff had sufficiently pled BBA and LEU as two halves of an association-in-fact enterprise. (*Id.* at 4-5). Plaintiff bears the burden of proving the RICO enterprise engaged in racketeering activity. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (internal quotation marks and citation omitted). But Plaintiff does not have to prove each individual defendant committed a predicate act. Additionally, one may commit mail fraud by causing the mails to be used. *United States v. Martinez*, 588 F.3d 301, 316 (6th Cir. 2009). It is not necessary that each defendant mail something herself. *United States v. Griffith*, 17 F.3d 865, 874 (6th Cir. 1994).

So even though I found the mailing of litigation documents relating to LEU does not count as mail fraud, there were several other mailings that did count. (Doc. No. 65 at 11). Plaintiff pled in its first amended complaint and now again in its third amended complaint that all the defendants, in furtherance of their joint scheme to defraud Plaintiff, caused these mailings to be sent. (Doc. Nos. 3 at ¶ 51 & 70-1 at 53). So LEU and its board members remain as defendants who may be found liable for those predicate acts.

Even were I to find I was wrong in my previous order, I have allowed Plaintiff to amend its complaint to add a RICO conspiracy claim, which alleges all defendants joined the conspiracy to defraud Plaintiff. (Doc. No. 70-1 at ¶ 65). A claim of conspiracy to commit a RICO violation also does not require proof "that each defendant personally committed two racketeering violations or overt acts in furtherance of the conspiracy." *United States v. Hughes*, 895 F.2d 1134, 1141 (6th Cir. 1990). It is enough that participants in the conspiracy "adopt the goal of furthering or facilitating" the endeavor. *Salinas v. United States*, 522 U.S. 52, 65 (1997). I therefore deny Defendants' motion to clarify.

**MOTION FOR RECONSIDERATION**

Plaintiff did not file a separate motion for reconsideration. Instead, Plaintiff included in its motion for leave to amend a section asking that I "reconsider and vacate" the part of my order finding the mailing of litigation documents relating to LEU cannot be predicate acts of mail fraud. (Doc. No. 69 at 7). Defendants argue that Plaintiff failed to establish any appropriate grounds for reconsideration. (Doc. No. 72 at 13).

There is no Federal Rule of Civil Procedure that provides for motions for reconsideration. But the Sixth Circuit has determined that "a motion which asks a court to vacate and reconsider, or even to reverse its prior holding, may properly be treated under Rule 59(e) as a motion to alter or amend a judgment." *Smith v. Hudson*, 600 F.2d 60, 62-63 (6th Cir. 1979). "Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). But the rule is not designed to give an unhappy litigant an opportunity to relitigate matters already decided; nor is it a substitute for appeal. *Dana Corp. v. United States*, 764 F. Supp. 482, 488-89 (N.D. Ohio 1991); *McConocha v. Blue Cross & Blue Shield Mut. Of Ohio*, 930 F. Supp. 1182, 1183 (N.D. Ohio 1996).

Plaintiff has cited neither an intervening change in the law nor newly-available evidence which might serve as the basis for a change in my prior decision. Instead, Plaintiff reargues the same points and case law it used in defending its pleading of the mail fraud predicate acts against Defendants' motion for judgment on the pleadings. (*Compare* Doc. No. 69 at 6-7, *with* Doc. No. 56 at 24-28). This is not a proper basis for a motion to reconsider. *See McConocha*, 930 F. Supp. at 1183. I therefore deny Plaintiff's motion for reconsideration. (Doc. No. 69).

## CONCLUSION

Accordingly, Plaintiff's motion to amend is granted in part and denied in part.  (Doc. No. 69).  Defendants' motion to clarify is denied.  (Doc. No. 67).  Plaintiff's motion for reconsideration is denied.  (Doc. No. 69).  Plaintiff has until October 13, 2017, to file an amended complaint consistent with the rulings I set forth in this opinion.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
